UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL CURTIS, JR.,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

Case No. 4:04-CV-73
Hon. David W. McKeague

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on July 2, 1942 and is a high school graduate with additional vocational training in automotive repair (brakes and front end suspension) (AR 50, 109).[1] Plaintiff stated that he became disabled on April 26, 1996 (AR 50).[2] Plaintiff had previously filed a claim for DIB on September 25, 2000, which alleged the same disability onset date (AR 14). This previous claim was denied on April 27, 2001 (AR 14). Accordingly, the Administrative Law Judge (ALJ) restricted consideration of plaintiff's current claim to that period beginning April 28, 2001 (AR 14).

Plaintiff had previous employment as in food service, as a fork lift driver, assembly line worker, assembler, delivery truck driver and housekeeping employee (AR 81-84, 104, 427).

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] Plaintiff's disability onset date coincides with the date he was incarcerated, April 26, 1996 (AR 76). See Section III.3., *infra*.

Plaintiff identified his disabling conditions as problems with his feet, knees, back, lungs, heart and a diseased liver (AR 103). He states that these conditions affect his ability to breathe, lift, stand for long periods and sit for long periods (AR 103). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on November 20, 2003 (AR 14-21). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbott*, 905 F.2d at 923.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. First, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 20). Second, the ALJ found that he suffered from mild osteoarthritis, mild chronic obstructive pulmonary disease (COPD),[3] coronary artery disease with angina, and mild depressive disorder, a combination of impairments considered "severe" (AR 20). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 20). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) "to perform the requirements of work except for lifting and carrying more than 20 pounds occasionally and performing more than simple, unskilled tasks. The claimant requires a sit/stand option." (AR 20). The ALJ concluded that plaintiff's past relevant work as a marine cable assembler and tester did not require the performance

---

[3] Chronic obstructive pulmonary disease, or COPD, is defined as "any disorder, e.g., asthma, chronic bronchitis, and pulmonary emphysema, marked by persistent obstruction of bronchial air flow." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at 480.

4

of work-related activities precluded by his RFC, and that his severe impairments did not prevent him from performing this past relevant work (AR 20-21). The ALJ also found plaintiff's allegations regarding his limitations were not fully credible (AR 20). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 21).

## III.  ANALYSIS

Plaintiff raises two issues on appeal.

**A.  Whether substantial evidence on the whole record compels a conclusion that [plaintiff] sustained his burden of demonstrating disability, when the Commissioner's DDS consultants found that [plaintiff] was limited in his ability to perform work outside a clean air environment, and when the Commissioner's VE testified that [plaintiff] could not perform any substantial gainful activity, given such a component of his residual functional capacity?**

**B.  Whether, given the VE's testimony of incompatibility between [plaintiff's] ability to perform any substantial gainful activity with that residual functional capacity component established as a fact by the ALJ, it is appropriate for this court to summarily reverse the Commissioner, directing the Commissioner to award [plaintiff] benefits?**

**1.  Breathing disorder**

The ALJ denied plaintiff's claim at the fourth step of the sequential evaluation, after determining that he could perform his past relevant work as a marine cable assembler and tester (AR 20-21). Plaintiff contends that he requires a clean air environment and that his previous work as a marine cable assembler and tester was not compatible with such "a clean air environment." Plaintiff's Brief at 8.

Plaintiff's COPD is well-documented in the medical record. For example, in February 2001 an examining physician observed that plaintiff had "probable COPD" based on a 15 year history of breathing difficulty and long history of tobacco abuse (AR 248). In this regard, plaintiff testified that he experiences shortness of breath and uses an albuterol inhaler (AR 438). Plaintiff also reported that he takes "Severant and Azmacort Inhalers as directed" (AR 246). Medical records from October 2002 indicate that plaintiff suffered from COPD (AR 335-41). In June 2003, Battle Creek Cardiology medical records indicate that plaintiff gets short of breath with exertion and that his current medications included an Albuterol inhaler (AR 325).

Two DDS physicians completed physical RFC assessments which determined that plaintiff should avoid exposure to certain environmental limitations (AR 303, 312).[4] In an assessment from March 2001, one of the DDS physicians concluded that plaintiff should "avoid concentrated exposure" to "[f]umes, odors, dusts, gases, poor ventilation, etc." (AR 312). In February 2002, a second DDS physician found that plaintiff should "avoid even moderate exposure" to "[f]umes, odors, dusts, gases, poor ventilation, etc." (AR 303). The ALJ's decision adopted portions of the DDS assessments, such as the weight lifting, standing and walking restrictions, but the decision did not address these environmental limitations (AR 19).

The record reflects that the ALJ was aware of the DDS physicians' conclusion that plaintiff had environmental limitations. During the administrative hearing, the ALJ asked the VE if plaintiff could perform his past work as a marine cable assembler and tester in a "relatively clean

---

[4] The environmental limitations section of the assessments rate the claimant's exposure to various environmental factors (e.g., extreme cold, wetness, fumes) at four levels: "unlimited," "avoid concentrated exposure," "avoid even moderate exposure," and "avoid all exposure" (AR 312).

environment" (AR 458).[5]  After eliciting information from plaintiff about the nature of this work, the VE responded "I don't believe so" (AR 458).  The ALJ then restated the question, "You don't believe it would be compatible with a clean air environment?" to which the VE responded "Correct . . . There's a lot of oil" (AR 459).  The VE's testimony indicates that plaintiff's past work as a marine cable assembler and tester was not compatible with a restriction that limited plaintiff to working in either a "clean air environment" or a "relatively clean air environment."

The Commissioner must provide a statement of evidence and reasons on which the decision is based.  *See* 42 U.S.C. § 405(b)(1).  While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).  In his decision, the ALJ found that plaintiff suffers from a severe impairment of COPD, but failed to articulate his reasons for disregarding the DDS physicians' environmental limitations that plaintiff avoid "[f]umes, odors, dusts, gases, poor ventilation, etc."  The court cannot trace the ALJ's reasoning in this decision.

---

[5] It is the claimant's burden at the fourth step of the sequential evaluation to show an inability to return to any past relevant work. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).  To support a finding that a claimant can perform his or her past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy.  *See Studaway v. Secretary of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987); *see also* 20 C.F.R. § 404.1565. A vocational expert's testimony is not required when the ALJ determines that a claimant is not disabled at step four of the sequential evaluation because the burden shifts to the Commissioner only when the claimant establishes that she has a disability which prevents her from performing her past relevant work. *See Banks v. Massanari*, 258 F. 3d 820, 827 (8th Cir. 2001)  (vocational expert testimony is not required until step five of the sequential analysis); *Parker v. Secretary of Health and Human Servs.*, No. 90-2084, 1991 WL 100547 at *3 (6th Cir. June 11, 1991).  Nevertheless, the ALJ may properly rely on a vocational expert's testimony to establish that a claimant can perform her past relevant work.  *See Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Warner v. Commissioner*, 375 F.3d 387, 389 (6th Cir. 2004); *Kennedy v. Commissioner*, No. 03-1276, 2003 WL 23140056 at *2 (6th Cir. Dec. 12, 2003).

Given plaintiff's medical history, coupled with the testimony of the VE, the ALJ should have given some rationale for either accepting or rejecting the environmental limitations.

Accordingly, the undersigned recommends that the ALJ's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate plaintiff's claim and specifically address the environmental limitations as set forth by the DDS physicians.

### 2. Frequent absenteeism

Next, plaintiff cryptically suggests that, "[g]iven the totality of the medical evidence, the ALJ should have concluded that [plaintiff's] medical impairments were such that he would in fact suffer from frequent absenteeism in relation to any proposed work, and ultimately would have lacked stamina to sustain any work effort." Plaintiff's Brief at 11. Plaintiff earned wages in 2001 and 2002 as employee of the AARP Foundation and testified that he worked in housekeeping at the VA hospital in Battle Creek (AR 55, 58, 427-28). At the time of the administrative hearing, plaintiff testified that he worked about 20 hours a week, but stated that he could not work a full 40-hour week, because he could not stand on his feet or sit that length of time and could only work three to four days a week (AR 428, 449-50).

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict). Here, the ALJ could properly discount plaintiff's

credibility with respect to his claim that he lacks the stamina to work a 40-hour work week. The ALJ found that "[n]o treating or examining physician has placed restrictions on the claimant" (AR 19). The ALJ also observed that plaintiff has full and varied daily activities: he uses public transportation, works part-time, goes shopping, watches television, fixes meals, attends a sex offender treatment group, gets along very well with others, visits his sister, goes out to eat, cleans his house, grooms himself, uses a telephone, pays bills and washes dishes (AR 19, 125-33, 255-59). Contradictions exist within the record with respect to plaintiff's ability to work. Accordingly, the ALJ could properly discount plaintiff's testimony regarding his alleged lack of stamina.

### 3.     Mr. Gustafson's testimony

Finally, plaintiff contends that the ALJ failed to direct a finding of disability based upon the report of his social worker, Dan Gustafson. Plaintiff sets forth the following brief contention:

> Although the ALJ summarily described [Mr. Gustafson's] testimony (ALJ Op. at 4), he did not make a conclusion one way or the other reference [sic] whether Mr. Gustafson's testimony was or was not credible, and, had he so made a determination of the credibility of that opinion, that third party opinion, from Mr. Curtis' social worker, would have too directed a finding of credibility.

Plaintiff's Brief at 11.

Plaintiff's contention is without merit. Mr. Gustafson testified that plaintiff is often overwhelmed by his medical impairments, distracted by his mental illness and had not shown any real stability since October 2000 (AR 452-55). The ALJ rejected Mr. Gustafson's testimony that plaintiff is mentally unstable as unsupported by the medical evidence(AR 19). The ALJ could properly discount or reject Mr. Gustafson's opinion based on the medical record in this case. The

9

record indicates that plaintiff was incarcerated in April 1996 (AR 76). The ALJ observed that since his release from prison in 2000, plaintiff has not received counseling or other therapy (aside from sex offender programming), has never been psychiatrically hospitalized and took no psychotropic medications until August 2003 (AR 19). Such a medical history is inconsistent with Mr. Gustafson's description of plaintiff as a person so mentally unstable as to be unable to work.

Furthermore, Mr. Gustafson, a case manager with no college degree (AR 452), is not an acceptable medical source under 20 C.F.R. §§ 404.1513 and 416.913. While his opinion can be considered as evidence from a non-medical source, it is not entitled the weight given to the opinions of doctors. *See* 20 C.F.R. §§ 404.1513(e)(4), 416.913(e) (evidence from "other" non-medical sources includes information from therapists). *See also, Shontos v. Barnhart*, 328 F.3d 418, 425-26 (8th Cir. 2003) (nurse practitioner is not an "acceptable medical source" under § 404.1513(a), but can be considered as an "other" medical source under 20 C.F.R. § 404.1513(d)(1)); *Nierzwick v. Commissioner of Social Security*, No. 00-1575, 2001 WL 303522 at * 4 (6th Cir. March 19, 2001) (physical therapist's report not afforded significant weight because the therapist is not recognized as an acceptable medical source). Accordingly, the ALJ could discount Mr. Gustafson's testimony regarding plaintiff's lack of mental stability.

## IV.   Recommendation

I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate

plaintiff's claim and specifically address the environmental limitations as set forth by the DDS physicians.

Dated:  July 5, 2005 	 /s/ Hugh W. Brenneman, Jr.
	Hugh W. Brenneman, Jr.
	United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).